# EXHIBIT A

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/027,202 | 02/06/2008 | Bradley Thomas Hyslop | E5982-00010 (E070002USU1) | 4379 |

77561      7590      12/15/2011
Duane Morris LLP (Entropic)
IP Department
30 South 17th Street
Philadelphia, PA 19103-4196

| EXAMINER |
|---|
| NGO, NGUYEN HOANG |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2473 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/15/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 12/027,202 | HYSLOP ET AL. |
| | Examiner | Art Unit | |
| | NGUYEN NGO | 2473 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>26 October 2011</u>.

2a)☐ This action is **FINAL**.      2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-22,28 and 29</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-22,28 and 29</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

Application/Control Number: 12/027,202                                                    Page 2

Art Unit: 2473

## DETAILED ACTION

### *Response to Amendment*

This communication is in response to the RCE of 10/26/2011.  All changes made

to the Claims have been entered.  Accordingly, Claims 1-22, 28-29 are currently

pending in the application.

### *Claim Rejections - 35 USC § 101*

1.      35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of
> matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the
> conditions and requirements of this title.

2.      Claims 13-22 are rejected under 35 U.S.C. 101 because the claimed invention is

directed to non-statutory subject matter.

The language of the claim raises a question as to whether the claim is directed

merely to an abstract idea that is not tied to a technological art, environment or machine

which would result in a practical application producing a concrete, useful, and tangible

result to form the basis of statutory subject matter under 35 U.S.C. 101.

**Claims 13,** claims the non-statutory subject matter of a program. Data structures not

claimed as embodied in computer-readable media are descriptive material per se and

are not statutory because they are not capable of causing functional change in the

computer. See, e.g., Warmerdam, 33 F.3d at 1361, 31 USPQ2d at 1754 (claim to a data

structure per se held nonstatutory). Therefore, since the claimed programs are not

tangibly embodied in a physical medium, encoded on a computer-readable medium and

Application/Control Number: 12/027,202                                          Page 3
Art Unit: 2473

clearly recited as a computer program then the Applicants has not complied with 35

U.S.C 101.

Furthermore, the USPTO is obliged to give claims their broadest reasonable

interpretation. The broadest reasonable interpretation of a claim drawn too a computer

readable medium (also called machine readable medium and other such variations)

typically covers forms of non-transitory tangible media and transitory propagating

signals per se in view of the ordinary and customary meaning of computer readable

media. When the broadest reasonable interpretation of a claim covers a signal per se,

the claim must be rejected under 35 U.S.C. 101 as covering non-statutory subject

matter. A claim drawn to such a computer readable medium that covers both transitory

and non-transitory embodiments may be amended to narrow the claim to cover only

statutory embodiments to avoid a rejection under 35 U.S.C. 101 by adding the limitation

"non-transitory" to the claim.

Examiner suggests using such phrases as "A **non-transitory computer readable**

**medium** embedded with a computer executable program including instructions for".

## *Claim Rejections - 35 USC § 103*

1.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the

Application/Control Number: 12/027,202                                    Page 4

Art Unit: 2473

> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

2.      The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103(a) are summarized as follows:

1.      Determining the scope and contents of the prior art.
2.      Ascertaining the differences between the prior art and the claims at issue.
3.      Resolving the level of ordinary skill in the pertinent art.
4.      Considering objective evidence present in the application indicating obviousness or nonobviousness.

3.      Claims 1-4, 6-18, 20-22, 28-29, are rejected under 35 U.S.C. 103(a) as being

unpatentable over Carlson et al. (US 2007/0002821), in view of Jiang et al. (US

2008/0130661).

**Regarding claim 1, 13, 28,** Carlson discloses a communication method (abstract and

figure 4), comprising:

broadcasting from a Network Coordinator (request handler, page 2 [0029]) to a

plurality of nodes connected to a network (broadcasting to nodes in a communication

network, page 9 [0117] and figure 4 and 8), a request for a guaranteed quality of service

flow in a network (virtual channel request which fulfills minimum required service quality,

page 2 [0029] and page 9 [0123]), the plurality of nodes including at least one ingress

node (intermediate node, figure 1) and at least one egress node (destination node,

figure 1);

receiving a first response to the request from the at least one ingress node, the

first response indicating whether the at least one ingress node has available resources

Application/Control Number: 12/027,202                                        Page 5

Art Unit: 2473

to transmit the guaranteed quality of service flow (404, 408, and 406 of figure 4 at

intermediate node);

 receiving a second response to the request from the at least one egress node

indicating whether the at least one egress node has available resources to receive the

guaranteed quality of service flow (404, 408, and 406 of figure 4 at destination node);

and

 allocating resources within the Network Coordinator (request handler, page 2

[0029]) for the guaranteed quality of service flow if the at least one ingress node has

available resources to transmit, and the at least one egress node has available

resources to receive, the guaranteed quality of service flow (allocation of transmission

resources for the virtual channel, page 2 [0020] and page 5 [0065] and page 9 [0123]).


 Carlson is however vague in disclosing of broadcasting from a network

coordinator to a source node and that the ingress node is a source node, wherein each

such source node is the point of origin for the purposes of the guaranteed quality of

service flow for data to be transmitted with the guaranteed quality of service flow.

Carlson clearly discloses that the intermediate node receives a virtual channel request

to determine the availability of the requested resources and forwards the request to the

destination node ([0076] and [0029]) Thus the Examiner may further correlate the

**intermediate node to a source node as the intermediate node is the source for**

**virtual channel allocation in which provides a guaranteed quality of service and is**

**the point of origin for the purposes of the guaranteed quality of service (where**

Application/Control Number: 12/027,202                                              Page 6

Art Unit: 2473

**the virtual channel starts and is allocated).** In a similar field of endeavor, Jiang better

illustrates such a limitation as Jiang discloses of establishing a VPN in which a network

management device (network coordinator) sends a link resource configuration

command (request) to the node devices (source and destination nodes) in a data

network, in which the nodes make a response based on their own resource situation if

their resource situation affords setup of the VPN ([0017]-[0120] and figure 4 and figure

8). Thus Examiner correlates the source node of Carlson to be a network management

device as seen by Jiang in which establishes a VPN in a network by sending request

messages to the nodes within a network including the source of the VPN (such as the

intermediate node of Carlson) and destination of the VPN. Thus it should have thus

been obvious to a person skilled in the art to incorporate the concept of having the

source node in which handles and establishes VPN within a network as disclosed by

Carlson be labeled a network management device as disclosed by Jiang in order to

better illustrate and portray the method of setting up a VPN.

**Regarding claim 2, 14, 29,** Carlson discloses the communication method of claim 1,

further including receiving at the Network Coordinator from an entry node a Submit

message, wherein the request is broadcast from the Network Coordinator as a

consequence of the received Submit message (application executed at an element

connected to the source node in which request a virtual channel through nodes in a

system, page 3 [0043] and page 4 [0047] and page 4 [0055]).

Application/Control Number: 12/027,202                                              Page 7

Art Unit: 2473

**Regarding claim 3, 15,** Carlson discloses the communication method of claim 1,

wherein the entry node is separate from the ingress node and the egress node (source

node, figure 1 and page 6 [0075]).

**Regarding claim 4**, Carlson discloses the communication method of claim 2, wherein

the Submit message and the request are Layer 2 messages (MAC, page 5 [0071]).

**Regarding claim 6, 16,** Carlson discloses the communication method of claim 1,

wherein if the received first response includes time-slot or packet size information, then

the ingress node can support the guaranteed quality of service flow (time period, page 9

[0120])

**Regarding claim 7, 17,** Carlson discloses the communication method of claim 1,

wherein if the received first response includes bandwidth information, then the ingress

node cannot support the guaranteed quality of service flow (offered resources, page 9

[0123] and 407 of figure 4).

**Regarding claim 8,** Carlson discloses the communication method of claim 1, wherein if

the received second response includes time-slot or packet size information, then the

egress node can support the guaranteed quality of service flow (time period, page 9

[0120]).

Application/Control Number: 12/027,202                                               Page 8

Art Unit: 2473


**Regarding claim 9**, Carlson disclose the communication method of claim 1, wherein if

the received second response includes bandwidth information, then the egress node

cannot support the guaranteed quality of service flow (offered resources, page 9 [0123]

and 407 of figure 4).


**Regarding claim 10,** Carlson discloses the communication method of claim 2, further

comprising the step of:

transmitting a unicast message to the entry node if the guaranteed quality of

service flow will not be created, the unicast message including the greatest common

bandwidth available on the network (service impossible message, page 10 [0125] and

figure 4).


**Regarding claim 11, 18, 20,** Carlson discloses the communication method of claim 1,

further including the step of:

broadcasting a message from the network coordinator to all the network nodes if

the network coordinator determines there are sufficient network resources to support

the guaranteed quality of service flow (resources are acceptable, page 10 [0124]).


**Regarding claim 12, 21,** Carlson discloses the communication method of claim 10,

wherein upon receiving the broadcast message, the network nodes commit network

Application/Control Number: 12/027,202                                                    Page 9

Art Unit: 2473

resources to the guaranteed quality of service flow (allocation of resources, page 5

[0065]).

**Regarding claim 22**, Carlson discloses wherein the first and second response are

Layer 2 messages (MAC, page 5 [0071]).

4.      Claim 5, and 19 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Carlson et al. (US 2007/0002821), in view of Jiang et al. (US 2008/0130661), in view of

Saleh (7002917).

**Regarding claim 5, 19,** Carlson and Jiang fails to specifically disclose receiving the

cost of admitting the flow from an ingress node, wherein the cost of the flow is based in

part on the number of existing flows in the network. Carlson however discloses that a

number of virtual channels may be established (page 10 [0129]). In a similar field of

endeavor, Saleh discloses determining paths and the costs of the bath between the root

node and the destination node so that the path with the minimum cost may be selected

(cost of admitting the flow from an ingress node, abstract). It would have thus been

obvious to a person skilled in the art to incorporate the concept of cost for paths or flows

as disclosed by Saleh into the resource reservation in a network as disclosed by

Carlson in order to efficiently and effectively determine the costs to reserve resources

for a path in a network.

Application/Control Number: 12/027,202                                                Page 10
Art Unit: 2473

### *Response to Arguments*

5.      Applicant's arguments with respect to claims 1-22, 29-29 have been considered

but are moot in view of the new ground(s) of rejection.


### *Conclusion*

6.      The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

7.      Saffre (US 2009/0135729)


        Any inquiry concerning this communication or earlier communications from the

examiner should be directed to NGUYEN NGO whose telephone number is (571)272-

8398.  The examiner can normally be reached on Monday-Friday 10am - 7 pm.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Kwang Yao can be reached on (571)272-3182.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 12/027,202                                    Page 11
Art Unit: 2473

     Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/KWANG B YAO/
Supervisory Patent Examiner, Art Unit 2473

/N. N./

Examiner, Art Unit 2473