# EXHIBIT B

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**(Case No. 29246US03)**

In the Application of:

           B. Hyslop, et al.

U.S. Serial No.:     12/027,202

Filed:        Feb. 6, 2008

For:    PARAMETERIZED QUALITY OF
SERVICE ARCHITECTURE IN A
NETWORK

Examiner:    Ngo, Nguyen Hoang
Group Art Unit:    2473
Conf. No.:    4379

Customer No.:    23446

**CERTIFICATE OF TRANSMISSION**

I hereby certify that this correspondence is being transmitted via EFS-Web to the United States Patent and Trademark Office on <u>May 3, 2017</u>.

<u>   /Shawn L. Peterson/   </u>
Shawn L. Peterson
Reg. No. 44,286

**<u>RESPONSE</u>**

Mail Stop: Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

    This paper responds to the Non-Final Office Action mailed on Nov. 3, 2017. This response is timely filed because it is being filed with a petition for a three-month extension of time, which runs the shortened statutory period for reply to May 3, 2017. The Applicant respectfully requests reconsideration in view of the following remarks.

    Amendments to the Claims begin on page 2.

    Remarks begin on page 12.

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

**Amendments to the Claims:**

This listing of claims will replace all prior versions and listings of claims in the application.

1. (Currently amended)        A communication method implemented in a Network Coordinator (NC) node of a communication network of a premises, the method comprising:

broadcasting, from a Network Coordinator (NC) node of a communication network of a premises to a plurality of nodes of the network, a request for a guaranteed quality of service flow in the network from a source node to at least one egress node one or more egress nodes, the plurality of nodes of the network to which the NC node Network Coordinator broadcasts the request including includes at least the source node and the at least one egress node;

receiving a first response to the request from the source node, wherein the source node is the point of origin for the purposes of the guaranteed quality of service flow for data to be communicated within the guaranteed quality of service flow, the first response indicating whether the source node has available resources to support transmit the guaranteed quality of service flow;

receiving a second response to the request from the at least one egress node indicating whether the at least one egress node has available resources to support receive the guaranteed quality of service flow; and

if the source node and the at least one egress node have available resources to support the guaranteed quality of service flow, then allocating resources within the Network Coordinator for the guaranteed quality of service flow if the source node has available resources to transmit, and the at least one egress node has available resources to receive, the guaranteed quality of service flow;

if the source node and the at least one egress node do not have available resources to support the guaranteed quality of service flow, then:

denying the guaranteed quality of service flow; and

if the guaranteed quality of service flow is denied based on bandwidth-related reasons, then determining a maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow, and transmitting a message comprising information describing the maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow.

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016


2. (Currently amended)  The communication method of claim 1, further comprising ~~including~~ receiving ~~at the Network Coordinator~~ from an entry node of the network a Submit message, wherein the request is broadcast from the Network Coordinator node as a consequence of the received Submit message,

          wherein the Submit message comprises information identifying the source node, and information identifying a data rate and packet size of the requested guaranteed quality of service flow.

3. (Previously presented)      The communication method of claim 1, wherein the network of a premises is a network of a home.

4. (Currently amended)      The communication method of claim 3, wherein the network of a home is a coaxial cable-based network, in which the NC node schedules all traffic for all other nodes of the network.

5. (Currently amended)      The communication method of claim 1, wherein the first response comprises information indicating the source node's cost associated with admitting the flow, and the second response does not comprise information indicating the at least one egress node's cost associated with admitting the flow ~~further including receiving the cost of admitting the flow from the [[a]] source node, wherein the cost of the flow is based in part on the number of existing flows in the network~~.

6. (Currently amended)      The communication method of claim 1, wherein:

          the received first response comprises first information indicating a peak data rate that the source node can commit to the requested guaranteed quality of service flow; and

          the method comprises determining whether there are sufficient resources to admit the flow based, at least in part, on the first information

          ~~if the received first response includes time-slot or packet size information, then the source node can support the guaranteed quality of service flow~~.

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

7. (Currently amended)        The communication method of claim 6 [[1]], wherein:

the received first response comprises second information indicating the source node's cost of supporting the requested guaranteed quality of service flow; and

the method comprises determining whether there are sufficient resources to admit the flow based, at least in part, on the second information ~~if the received first response includes bandwidth information, then the source node cannot support the guaranteed quality of service flow~~.

8. (Currently amended)        The communication method of claim 7 [[1]], wherein:

the received second response comprises third information indicating a peak data rate that the egress node can commit to the requested guaranteed quality of service flow;

the received second response comprises fourth information indicating the egress node's cost of supporting the requested guaranteed quality of service flow; and

the method comprises determining whether there are sufficient resources to admit the flow based, at least in part, on the third and fourth information ~~if the received second response includes time slot or packet size information, then the egress node can support the guaranteed quality of service flow~~.

9. (Currently amended)        The communication method of claim 8 [[1]], wherein the second response comprises an information field for a code indicating why the egress node is unable to fulfill the request for the guaranteed quality of service flow ~~if the received second response includes bandwidth information, then the egress node cannot support the guaranteed quality of service flow~~.

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

10. (Currently amended)       The communication method of claim 1 [[2]], comprising if the source node and the at least one egress node have available resources to support the guaranteed quality of service flow, then transmitting at least one request message indicating that the requested guaranteed quality of service flow is admitted

~~further comprising transmitting a unicast message to the entry node if the guaranteed quality of service flow will not be created, the unicast message including the greatest common bandwidth available on the network~~.

11. (Currently amended)       The communication method of claim 10, wherein the message, comprising information describing the maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow, additionally comprises a code indicating that the request for the guaranteed quality of service flow was denied based on bandwidth-related reasons ~~further including broadcasting a message from the network coordinator to all the network nodes of the network if the network coordinator determines there are sufficient network resources to support the guaranteed quality of service flow~~.

12.       (Currently amended)  The communication method of claim 11, ~~wherein~~ comprising at the source node and the egress node, if the at least one message transmitted by the NC node indicating that the requested guaranteed quality of service flow is admitted is received, then:

allocating resources necessary to support the guaranteed quality of service flow; and

communicating a response message to the NC node indicating that the necessary resources have been allocated

~~upon receiving the broadcast message, the network nodes of the network commit network resources to the guaranteed quality of service flow~~.

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

13. (Currently amended)      A non-transitory machine readable storage medium encoded with program code, wherein when the program code is executed by one or more [[a]] processors of a Network Coordinator (NC) node of a communication network of a premises, the NC node processor performs a communication method comprising:

broadcasting, from a Network Coordinator (NC) node of a communication network of a premises to a plurality of nodes of the network, a request for a guaranteed quality of service flow in the network from a source node to at least one egress node one or more egress nodes, the plurality of nodes of the network to which the NC node Network Coordinator broadcasts the request including includes at least the source node and the at least one egress node;

receiving a first response to the request from the source node, wherein the source node is the point of origin for the purposes of the guaranteed quality of service flow for data to be communicated within the guaranteed quality of service flow, the first response indicating whether the source node has available resources to support transmit the guaranteed quality of service flow directly to the at least one egress node;

receiving a second response to the request from the at least one egress node indicating whether the at least one egress node has available resources to support receive the guaranteed quality of service flow; and

if the source node and the one or more egress node have available resources to support the guaranteed quality of service flow, then allocating within the Network Coordinator resources for the guaranteed quality of service flow if the source node has available resources to transmit, and the at least one egress node has available resources to receive, the guaranteed quality of service flow

if the source node and the one or more egress nodes do not have available resources to support the guaranteed quality of service flow, then:

denying the guaranteed quality of service flow; and

if the guaranteed quality of service flow is denied based on bandwidth-related reasons, then determining a maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow, and transmitting a message comprising information describing the maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow.

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

14. (Currently amended)    The non-transitory machine readable storage medium of claim 13, the method further comprising ~~including~~ receiving ~~at the Network Coordinator~~ from an entry node of the network a Submit message, wherein the request is broadcast from the Network Coordinator node as a consequence of the received Submit message~~.~~

wherein the Submit message comprises information identifying the source node, and information identifying a data rate and packet size of the requested guaranteed quality of service flow.

15. (Currently amended)    The non-transitory machine readable storage medium of claim 13, wherein the network of a premises is a network of a home.

16. (Currently amended)    The non-transitory machine readable storage medium of claim 13, wherein:

the received first response comprises first information indicating a peak data rate that the source node can commit to the requested guaranteed quality of service flow; and

the method comprises determining whether there are sufficient resources to admit the flow based, at least in part, on the first information

~~if the received first response includes time-slot or packet size information, then the source node can support the guaranteed quality of service flow.~~

17. (Currently amended)    The non-transitory machine readable storage medium of claim 16 [[13]], wherein:

the received first response comprises second information indicating the source node's cost of supporting the requested guaranteed quality of service flow; and

the method comprises determining whether there are sufficient resources to admit the flow based, at least in part, on the second information

~~if the received second response includes bandwidth information, then the egress node cannot support the guaranteed quality of service flow.~~

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

18. (Currently amended)     The non-transitory machine readable storage medium of claim 13, wherein the first response comprises information indicating the source node's cost associated with admitting the flow, and the second response does not comprise information indicating the at least one egress node's cost associated with admitting the flow ~~the method further comprising determining at the network coordinator if the guaranteed quality of service flow is supported based on network bandwidth information received from a node of the network~~.

19. (Currently amended)     The non-transitory machine readable storage medium of claim 13 [[18]], wherein the method comprises, if the source node and the at least one egress node have available resources to support the guaranteed quality of service flow, then transmitting at least one request message indicating that the requested guaranteed quality of service flow is admitted ~~received network bandwidth information includes the cost of the flow in the network~~.

20. (Currently amended)     The non-transitory machine readable storage medium of claim 19 [[13]], wherein the message, comprising information describing the maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow, additionally comprises a code indicating that the request for the guaranteed quality of service flow was denied based on bandwidth-related reasons ~~the method further comprising broadcasting a message from the network coordinator to all network nodes of the network if resources are allocated for the guaranteed quality of service flow~~.

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

21. (Currently amended)      The non-transitory machine readable storage medium of claim 20, the method comprising at the source node and the egress node, if the at least one message transmitted by the NC node indicating that the requested guaranteed quality of service flow is admitted is received, then:

> allocating resources necessary to support the guaranteed quality of service flow; and

> communicating a response message to the NC node indicating that the necessary resources have been allocated ~~wherein upon receiving the broadcast message, the network nodes of the network commit network resources to the guaranteed quality of service flow~~.

22.      (Currently amended)  The non-transitory machine readable storage medium of claim 13, wherein the network of a premises is a coaxial cable-based network of a home, in which the NC node schedules all traffic for all other nodes of the network ~~home is a coaxial cable-based network~~.

23-27. (Canceled)

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

28. (Currently amended)       A system comprising:

a Network Coordinator (NC) node of a communication network of a premises, the Network Coordinator operative configured to broadcast to a plurality of nodes of the network a request for a guaranteed quality of service flow in the network;

a source node of the network, wherein the source node is the point of origin for the purposes of the guaranteed quality of service flow for data to be communicated within the guaranteed quality of service flow, the source node operative configured to transmit a first response to the NC node Network Coordinator, the first response indicating whether the source node has available resources to support transmit the guaranteed quality of service flow;

at least one egress node of the network, the at least one egress node operative configured to transmit a second response to the Network Coordinator, the second response indicating whether the at least one egress node has available resources to support receive the guaranteed quality of service flow from the source node;

wherein the Network Coordinator is further operative configured to:

if the source node and the one or more egress nodes do not have available resources to support the guaranteed quality of service flow, then at the NC node, deny the guaranteed quality of service flow; and

if the guaranteed quality of service flow is denied based on bandwidth-related reasons, then at the NC node, determine a maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow, and transmit a message comprising information describing the maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow; and

allocate resources for the guaranteed quality of service flow if the source node has available resources to transmit, and the at least one egress node has available resources to receive, the quality of service flow.

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

29. (Currently amended)        The system of claim 28, wherein the Network Coordinator is
further configured to broadcast the request as a consequence of receiving a Submit message from
an entry ~~Entry~~ node of the network<u>,</u>

<u>wherein the Submit message comprises information identifying the source node,
and information identifying a data rate and packet size of the requested guaranteed
quality of service flow</u>.

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

**REMARKS**

Claims 1-22, 28, and 29 were pending in the present application at the time of the Office Action.

Claims 1-3, 5, 11-15, 19-21, 28, and 29 stand rejected stand rejected under pre-AIA 35 U.S.C. § 103(a) as being unpatentable over U.S. Patent Application Pub. No. 2003/0005130 of Cheng ("Cheng") in view of U.S. Patent No. 6,272127 to Golden et al. ("Golden").

Claims 4 and 22 stand rejected stand rejected under pre-AIA 35 U.S.C. § 103(a) as being unpatentable over Chen in view of Golden and in further view of U.S. Patent No. 7,904,578 to Anshutz ("Anshutz").

Claims 6-10 and 16-18 stand rejected stand rejected under pre-AIA 35 U.S.C. § 103(a) as being unpatentable over Chen in view of Golden and in further view of U.S. Patent Application Pub. No. 2007/0002821 of Carlson et al. ("Carlson").

For at least the reasons stated below, the Applicant respectfully traverses the above rejections and submits that all pending claims are allowable.

Though the Applicant generally disagrees with such rejections, to expedite allowance of various pending claims, the following discussion will focus in part on particular independent and dependent claims. Note that such focus is in no way to be construed as the Applicant agreeing with any rejections not specifically discussed below.

**35 U.S.C. § 103(a) Rejections – Cheng and Golden**

Claims 1-3, 5, 11-15, 19-21, 28, and 29 stand rejected stand rejected under pre-AIA 35 U.S.C. § 103(a) as being unpatentable over U.S. Patent Application Pub. No. 2003/0005130 of Cheng ("Cheng") in view of U.S. Patent No. 6,272127 to Golden et al. ("Golden"). Without conceding that Cheng and/or Golden qualify as prior art under 35 U.S.C. § 103(a) to the present application, the Applicant respectfully traverses such rejections.

**Independent Claim 1**

Turning first to independent claim 1, such claim is directed to a communication method implemented in a Network Controller (NC) node of a communication network of a premises. Claim 1 as currently amended recites, among other things, "if the guaranteed quality of service

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

flow is denied based on bandwidth-related reasons, then determining a maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow, and transmitting a message comprising information describing the maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow."

Upon diligent review of the references of record, the Applicant was unable to find any indication of such operation.  Accordingly, for at least this reason, the Applicant submits that claim 1 is allowable, as are all claims depending therefrom, including claims 2-12.   The Applicant also submits that each of claims 2-12 is independently allowable.

**Claim 2**

Turning next to claim 2, such claim depends from claim 1 and is thus allowable for at least the reasons discussed herein with regard to claim 1.  The Applicant also submits that claim 2 is independently allowable.

For example, claim 2 as currently amended recites, "receiving from an entry node of the network a Submit message, …, wherein the Submit message comprises information identifying the source node, and information identifying a data rate and packet size of the requested guaranteed quality of service flow."   Upon diligent review of the references of record, the Applicant was unable to find any indication of such messaging.

Accordingly, for at least this additional reason, the Applicant submits that claim 2 is allowable.

**Claim 3**

Turning next to claim 3, such claim depends from claim 1 and is thus allowable for at least the reasons discussed herein with regard to claim 1.  The Applicant also submits that claim 3 is independently allowable.

**Claim 5**

Turning next to claim 5, such claim depends from claim 1 and is thus allowable for at least the reasons discussed herein with regard to claim 1.  The Applicant also submits that claim 5 is independently allowable.

For example, claim 5 as currently amended recites, "wherein the first response comprises information indicating the source node's cost associated with admitting the flow, and the second response does not comprise information indicating the at least one egress node's cost associated

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

with admitting the flow." Upon diligent review of the references of record, the Applicant was unable to find any indication of such responses.

Accordingly, for at least this additional reason, the Applicant submits that claim 5 is allowable.

**Claim 11**

Turning next to claim 11, such claim depends from claims 10 and 1 and is thus allowable for at least the reasons discussed herein with regard to claims 10 and 1. The Applicant also submits that claim 11 is independently allowable.

For example, claim 11 as currently amended recites, "wherein the message, comprising information describing the maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow, additionally comprises a code indicating that the request for the guaranteed quality of service flow was denied based on bandwidth-related reasons." Upon diligent review of the references of record, the Applicant was unable to find any indication of such messaging.

Accordingly, for at least this additional reason, the Applicant submits that claim 11 is allowable.

**Claim 12**

Turning next to claim 12, such claim depends from claims 11, 10, and 1 and is thus allowable for at least the reasons discussed herein with regard to claims 11, 10, and 1. The Applicant also submits that claim 12 is independently allowable.

For example, claim 12 as currently amended recites, "comprising at the source node and the egress node, if the at least one message transmitted by the NC node indicating that the requested guaranteed quality of service flow is admitted is received, then: allocating resources necessary to support the guaranteed quality of service flow; and communicating a response message to the NC node indicating that the necessary resources have been allocated." Upon diligent review of the references of record, the Applicant was unable to find any indication of such operation.

Accordingly, for at least this additional reason, the Applicant submits that claim 12 is allowable.

14

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

**Independent Claim 13**

Turning next to independent claim 13, such claim is directed to a non-transitory machine readable storage medium.  Claim 13 as currently amended recites, among other things, "if the guaranteed quality of service flow is denied based on bandwidth-related reasons, then determining a maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow, and transmitting a message comprising information describing the maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow."

Upon diligent review of the references of record, the Applicant was unable to find any indication of such operation.  Accordingly, for at least this reason, the Applicant submits that claim 13 is allowable, as are all claims depending therefrom, including claims 14-22.  The Applicant also submits that each of claims 14-22 is independently allowable.

**Claim 14**

Turning next to claim 14, such claim depends from claim 13 and is thus allowable for at least the reasons discussed herein with regard to claim 13.  The Applicant also submits that claim 14 is independently allowable.

For example, claim 14 as currently amended recites, "receiving from an entry node of the network a Submit message, …, wherein the Submit message comprises information identifying the source node, and information identifying a data rate and packet size of the requested guaranteed quality of service flow."  Upon diligent review of the references of record, the Applicant was unable to find any indication of such messaging.

Accordingly, for at least this additional reason, the Applicant submits that claim 14 is allowable.

**Claim 15**

Turning next to claim 15, such claim depends from claim 13 and is thus allowable for at least the reasons discussed herein with regard to claim 13.  The Applicant also submits that claim 15 is independently allowable.

**Claim 19**

Turning next to claim 19, such claim depends from claim 13 and is thus allowable for at least the reasons discussed herein with regard to claim 13.  The Applicant also submits that claim

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

19 is independently allowable.

For example, claim 19 as currently amended recites, "method comprises, if the source node and the at least one egress node have available resources to support the guaranteed quality of service flow, then transmitting at least one request message indicating that the requested guaranteed quality of service flow is admitted." Upon diligent review of the references of record, the Applicant was unable to find any indication of such operation.

Accordingly, for at least this additional reason, the Applicant submits that claim 19 is allowable.

**Claim 20**

Turning next to claim 20, such claim depends from claims 19 and 13 and is thus allowable for at least the reasons discussed herein with regard to claims 19 and 13. The Applicant also submits that claim 20 is independently allowable.

For example, claim 20 as currently amended recites, "wherein the message, comprising information describing the maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow, additionally comprises a code indicating that the request for the guaranteed quality of service flow was denied based on bandwidth-related reasons." Upon diligent review of the references of record, the Applicant was unable to find any indication of such messaging.

Accordingly, for at least this additional reason, the Applicant submits that claim 20 is allowable.

**Claim 21**

Turning next to claim 21, such claim depends from claims 20, 19, and 13 and is thus allowable for at least the reasons discussed herein with regard to claims 20, 19, and 13. The Applicant also submits that claim 21 is independently allowable.

For example, claim 21 as currently amended recites, "the method comprising at the source node and the egress node, if the at least one message transmitted by the NC node indicating that the requested guaranteed quality of service flow is admitted is received, then: allocating resources necessary to support the guaranteed quality of service flow; and communicating a response message to the NC node indicating that the necessary resources have been allocated." Upon diligent review of the references of record, the Applicant was unable to

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

find any indication of such operation.

Accordingly, for at least this additional reason, the Applicant submits that claim 21 is allowable.

**Independent Claim 28**

Turning next to independent claim 28, such claim is directed to a system.  Claim 28 as currently amended recites, among other things, "if the guaranteed quality of service flow is denied based on bandwidth-related reasons, then at the NC node, determine a maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow, and transmit a message comprising information describing the maximum data rate that would have resulted in a successful request for a guaranteed quality of service flow."

Upon diligent review of the references of record, the Applicant was unable to find any indication of such operation.  Accordingly, for at least this reason, the Applicant submits that claim 28 is allowable, as are all claims depending therefrom, including claim 29.  The Applicant also submits that claim 29 is independently allowable.

**Claim 29**

Turning next to claim 29, such claim depends from claim 28 and is thus allowable for at least the reasons discussed herein with regard to claim 28.  The Applicant also submits that claim 29 is independently allowable.

For example, claim 29 as currently amended recites, "receiving a Submit message from an entry node of the network, wherein the Submit message comprises information identifying the source node, and information identifying a data rate and packet size of the requested guaranteed quality of service flow."  Upon diligent review of the references of record, the Applicant was unable to find any indication of such messaging.

Accordingly, for at least this additional reason, the Applicant submits that claim 29 is allowable.

**35 U.S.C. § 103(a) Rejections – Cheng, Golden, and Anshutz**

Claims 4 and 22 stand rejected stand rejected under pre-AIA 35 U.S.C. § 103(a) as being unpatentable over Chen in view of Golden and in further view of U.S. Patent No. 7,904,578 to

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

Anshutz ("Anshutz").  Without conceding that Cheng, Golden, and/or Anshutz qualify as prior art under 35 U.S.C. § 103(a) to the present application, the Applicant respectfully traverses such rejections.

**Claim 4**

Turning next to claim 4, such claim depends from at least claim 1, and Anshutz fails to cure the deficiencies of Cheng and Golden discussed herein with regard to claim 1.  Thus, claim 4 is allowable for at least the reasons discussed herein with regard to claim 1.  The Applicant also submits that claim 4 is independently allowable.

For example, claim 4 as currently amended recites, "wherein the network of a home is a coaxial cable-based network, in which the NC node schedules all traffic for all other nodes of the network."  Upon diligent review of the references of record, the Applicant was unable to find any indication of such an NC node.

Accordingly, for at least this additional reason, the Applicant submits that claim 4 is allowable.

**Claim 22**

Turning next to claim 22, such claim depends from at least claim 13, and Anshutz fails to cure the deficiencies of Cheng and Golden discussed herein with regard to claim 13.  Thus, claim 22 is allowable for at least the reasons discussed herein with regard to claim 13.  The Applicant also submits that claim 22 is independently allowable.

For example, claim 22 as currently amended recites, "wherein the network of a premises is a coaxial cable-based network of a home, in which the NC node schedules all traffic for all other nodes of the network."  Upon diligent review of the references of record, the Applicant was unable to find any indication of such an NC node.

Accordingly, for at least this additional reason, the Applicant submits that claim 22 is allowable.

**35 U.S.C. § 103(a) Rejections – Cheng, Golden, and Carlson**

Claims 6-10 and 16-18 stand rejected stand rejected under pre-AIA 35 U.S.C. § 103(a) as being unpatentable over Chen in view of Golden and in further view of U.S. Patent Application Pub. No. 2007/0002821 of Carlson et al. ("Carlson").  Without conceding that Cheng, Golden,

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

and/or Carlson qualify as prior art under 35 U.S.C. § 103(a) to the present application, the Applicant respectfully traverses such rejections.

## Claim 6

Turning next to claim 6, such claim depends from claim 1, and Carlson fails to cure the deficiencies of Cheng and Golden discussed herein with regard to claim 1. Thus, claim 6 is allowable for at least the reasons discussed herein with regard to claim 1. The Applicant also submits that claim 6 is independently allowable.

For example, claim 6 as currently amended recites, "the received first response comprises first information indicating a peak data rate that the source node can commit to the requested guaranteed quality of service flow; and the method comprises determining whether there are sufficient resources to admit the flow based, at least in part, on the first information." Upon diligent review of the references of record, the Applicant was unable to find any indication of such messaging and/or determining.

Accordingly, for at least this additional reason, the Applicant submits that claim 6 is allowable.

## Claim 7

Turning next to claim 7, such claim depends from claims 6 and 1, and is thus allowable for at least the reasons discussed herein with regard to claims 6 and 1. The Applicant also submits that claim 7 is independently allowable.

For example, claim 7 as currently amended recites, "the received first response comprises second information indicating the source node's cost of supporting the requested guaranteed quality of service flow; and the method comprises determining whether there are sufficient resources to admit the flow based, at least in part, on the second information." Upon diligent review of the references of record, the Applicant was unable to find any indication of such messaging and/or determining.

Accordingly, for at least this additional reason, the Applicant submits that claim 7 is allowable.

## Claim 8

Turning next to claim 8, such claim depends from claims 7, 6, and 1, and is thus allowable for at least the reasons discussed herein with regard to claims 7, 6, and 1. The

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

Applicant also submits that claim 8 is independently allowable.

For example, claim 8 as currently amended recites, "the received second response comprises third information indicating a peak data rate that the egress node can commit to the requested guaranteed quality of service flow; the received second response comprises fourth information indicating the egress node's cost of supporting the requested guaranteed quality of service flow; and the method comprises determining whether there are sufficient resources to admit the flow based, at least in part, on the third and fourth information."  Upon diligent review of the references of record, the Applicant was unable to find any indication of such messaging and/or determining.

Accordingly, for at least this additional reason, the Applicant submits that claim 8 is allowable.

**Claim 9**

Turning next to claim 9, such claim depends from claims 8, 7, 6, and 1 and is thus allowable for at least the reasons discussed herein with regard to claims 8, 7, 6, and 1.  The Applicant also submits that claim 9 is independently allowable.

For example, claim 9 as currently amended recites, "wherein the second response comprises an information field for a code indicating why the egress node is unable to fulfill the request for the guaranteed quality of service flow."  Upon diligent review of the references of record, the Applicant was unable to find any indication of such messaging.

Accordingly, for at least this additional reason, the Applicant submits that claim 9 is allowable.

**Claim 10**

Turning next to claim 10, such claim depends from claim 1, and Carlson fails to cure the deficiencies of Cheng and Golden discussed herein with regard to claim 1.  Thus, claim 10 is allowable for at least the reasons discussed herein with regard to claim 1.  The Applicant also submits that claim 10 is independently allowable.

For example, claim 10 as currently amended recites, "comprising if the source node and the at least one egress node have available resources to support the guaranteed quality of service flow, then transmitting at least one request message indicating that the requested guaranteed quality of service flow is admitted."  Upon diligent review of the references of record, the

20

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

Applicant was unable to find any indication of such operation.

Accordingly, for at least this additional reason, the Applicant submits that claim 10 is allowable.

**Claim 16**

Turning next to claim 16, such claim depends from claim 13, and Carlson fails to cure the deficiencies of Cheng and Golden discussed herein with regard to claim 13.  Thus, claim 16 is allowable for at least the reasons discussed herein with regard to claim 13.  The Applicant also submits that claim 16 is independently allowable.

For example, claim 16 as currently amended recites, "the received first response comprises first information indicating a peak data rate that the source node can commit to the requested guaranteed quality of service flow; and the method comprises determining whether there are sufficient resources to admit the flow based, at least in part, on the first information." Upon diligent review of the references of record, the Applicant was unable to find any indication of such receiving and/or determining.

Accordingly, for at least this additional reason, the Applicant submits that claim 16 is allowable.

**Claim 17**

Turning next to claim 17, such claim depends from claims 16 and 13 and is thus allowable for at least the reasons discussed herein with regard to claims 16 and 13.  The Applicant also submits that claim 17 is independently allowable.

For example, claim 17 as currently amended recites, "the received first response comprises second information indicating the source node's cost of supporting the requested guaranteed quality of service flow; and the method comprises determining whether there are sufficient resources to admit the flow based, at least in part, on the second information."  Upon diligent review of the references of record, the Applicant was unable to find any indication of such receiving and/or determining.

Accordingly, for at least this additional reason, the Applicant submits that claim 17 is allowable.

**Claim 18**

Turning next to claim 18, such claim depends from claim 13, and Carlson fails to cure the

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016

deficiencies of Cheng and Golden discussed herein with regard to claim 13. Thus, claim 18 is allowable for at least the reasons discussed herein with regard to claim 13. The Applicant also submits that claim 18 is independently allowable.

For example, claim 18 as currently amended recites, "wherein the first response comprises information indicating the source node's cost associated with admitting the flow, and the second response does not comprise information indicating the at least one egress node's cost associated with admitting the flow." Upon diligent review of the references of record, the Applicant was unable to find any indication of such messaging.

Accordingly, for at least this additional reason, the Applicant submits that claim 18 is allowable.

**Final Matters**

The Office Action makes various statements, including without limitation, statements regarding former claims 1-22, 28, and 29, 35 U.S.C. § 103, the Cheng reference, the Golden reference, the Anshutz reference, the Carlson reference, and one of ordinary skill in the art, that are now moot in view of the previously presented amendments and/or arguments. Thus, the Applicant will not address all of such statements at the present time. However, the Applicant expressly reserves the right to challenge such statements in the future should the need arise (*e.g.*, if such statements should become relevant by reappearing in a rejection of any current or future claim or be relied upon in any proceeding involving this application or a corresponding patent).

**Summary**

In summary, the Applicant submits that pending claims 1-22, 28, and 29 are allowable over the references of record and in condition for allowance. Accordingly, the Applicant courteously solicits a Notice of Allowability with respect to all pending claims. If the Examiner disagrees, the Applicant requests an Examiner Interview to discuss the pending claims and the references. In particular, to advance prosecution of the present application, the Applicant requests an Examiner Interview prior to any final rejection of the pending claims. The Applicant invites the Examiner to contact the undersigned at 312-775-8000 to arrange such an interview.

Appl. No. 12/027,202
Resp. dated May 3, 2017
Resp. to Final Office Action of Nov. 3, 2016


     The Commissioner is hereby authorized to charge additional fees or credit overpayments to the deposit account of McAndrews, Held & Malloy, Account No. 13-0017.

Date:  <u>May 3, 2017</u>             Respectfully submitted,


                      <u>/Shawn L. Peterson/</u>
                      Shawn L. Peterson
                      Reg. No. 44,286
                      Attorney for the Applicant

McANDREWS, HELD & MALLOY, LTD.
500 W. Madison, Suite 3400
Chicago, IL  60661
Telephone:  (312) 775-8000

23

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 12027202 |
| **Filing Date:** | 06-Feb-2008 |
| **Title of Invention:** | PARAMETERIZED QUALITY OF SERVICE ARCHITECTURE IN A NETWORK |
| **First Named Inventor/Applicant Name:** | Bradley Thomas Hyslop |
| **Filer:** | Shawn Leonard Peterson/Maggie Daly |
| **Attorney Docket Number:** | 29246US03 |

Filed as Large Entity

**Filing Fees for  Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 3 months with $0 paid | 1253 | 1 | 1400 | 1400 |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **1400** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 29111008 |
| **Application Number:** | 12027202 |
| **International Application Number:** | |
| **Confirmation Number:** | 4379 |
| **Title of Invention:** | PARAMETERIZED QUALITY OF SERVICE ARCHITECTURE IN A NETWORK |
| **First Named Inventor/Applicant Name:** | Bradley Thomas Hyslop |
| **Customer Number:** | 23446 |
| **Filer:** | Shawn Leonard Peterson/Maggie Daly |
| **Filer Authorized By:** | Shawn Leonard Peterson |
| **Attorney Docket Number:** | 29246US03 |
| **Receipt Date:** | 03-MAY-2017 |
| **Filing Date:** | 06-FEB-2008 |
| **Time Stamp:** | 21:22:26 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $1400 |
| RAM confirmation Number | 050417INTEFSW21241600 |
| Deposit Account | 130017 |
| Authorized User | Shawn Peterson |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

    37 CFR 1.16 (National application filing, search, and examination fees)

    37 CFR 1.17 (Patent application and reexamination processing fees)

37 CFR 1.19 (Document supply fees)

37 CFR 1.20 (Post Issuance fees)

37 CFR 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 29246US03_Response_to_2016-11-03_NFOA.pdf | 108122<br>0d0f732828c331fbc1e7b01d75ba65ee685321c0 | yes | 23 |

| | Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|---|
| | **Document Description** | **Start** | | **End** |
| | Amendment/Req. Reconsideration-After Non-Final Reject | 1 | | 1 |
| | Claims | 2 | | 11 |
| | Applicant Arguments/Remarks Made in an Amendment | 12 | | 23 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 31138<br>7d9653a62fd33160835791fe9d03e9fe8de92e7d | no | 2 |

**Warnings:**

**Information:**

| | | | | |
|---|---|---|---|---|
| | | **Total Files Size (in bytes):** | 139260 | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.